Lorenzo v. Prime Communications, Mr. Pollack. May it please the Court. Good morning. I'm Bill Pollack of the North Carolina Bar Court, along with John Walker and Amy Savant. We represent the defendant appellant, in this case, Prime Communications. As this Court is well aware, this is two separate appeals that are consolidated. I'm going to deal first with the issue of arbitration, because I think if the Court deals with that first, you don't even need to get to the second issue of class certification, if you would agree with our argument. On the arbitration issue, the District Court erred by taking the Federal Arbitration Act and strong precedent from the Supreme Court and this Court and standing it on its head and refusing to compel arbitration. On the arbitration issue, the dispute is over whether the plaintiff, Rose Lorenzo, entered into an enforceable arbitration agreement with Prime. There's nothing in the record and there's no arguments about anything unfair about the arbitration program. Well established under the Federal Arbitration Act that that is designed to promote arbitration, and there's a strong Federal policy. Yeah, but that's only if the language that you look at outside of that agrees to arbitration. Yes, Your Honor. Don't you just use normal contract principles to decide whether or not the parties agree to arbitration? Yes, you do. Okay. Isn't that where this issue lies? Yes, it does. So what's that got to do with policy under the Arbitration Act? It doesn't have anything to do with that, does it? Well, it does, Your Honor, in the sense that if you take the Moses Cone v. Mercury construction case from the Supreme Court, it says if you have any doubts, you have to resolve those doubts in favor of arbitration. No, no, no. That's not as to the initial decision whether or not there's an agreement to arbitrate. That says whether or not if there's an arbitration agreement, then what that covers. Isn't that right? You first have to decide if the parties have agreed to arbitration. There's no presumption that parties have agreed to arbitration. You have to look at the facts of the case to see if the parties have reached an agreement under normal contract provisions and agreement provisions to see if there is an arbitration provision. Once there is, then you get a presumption in favor maybe of what's covered by that agreement. Isn't that the law? No, I think if you look at Moses Cone, it says on all issues when you're looking at arbitration, you have to resolve those doubts in favor of arbitration. So if you've got an ambiguous agreement, we have to do it in your favor? Is that what you're saying? I have not seen any cases that specifically say that. Well, that's what you seem to be saying. If you can't make sense out of it, you have to say, well, they did agree to arbitrate, so we'll sue them for arbitration. You all didn't think much of it. It took you a year and a half to make a motion. No. The lawsuit started. Actually, Your Honor, if you look at the very first answer that was filed, the caption of it was answer and motion to compel arbitration. So that issue was brought to the court's attention and the plaintiff's attention. You waited a month? You waited 16 months. I said a year. You waited 16 months to move to compel arbitration. Yes, Your Honor. The first four months were— And then after the court ruled, you didn't appeal. And there's North Carolina law and Fourth Circuit law that seems to suggest if you have a handbook and continue to work, that creates a contract. And at that point, there was no need to get the signed authorization. The signed authorization, when you finally found it, seems to create problems for you. Well, Your Honor, if you look at what the district court said in this case, both at the magistrate level and the district court, that seemed to be the troubling issue to them. Why didn't you appeal it? You probably would have won at that point. Hindsight's 20-20, Your Honor. You might would have won. You might would have won. But so they think there had to be a signed authorization to acknowledge the receipt of it. The signed authorization contains language that seems to contradict the initial proposition that the handbook created a contract. Right. Well, first, if you look at what the magistrate judge said, said the defendants were unable to produce evidence that Lorenzo signed a written acknowledgment there by not showing assent. But that was not a legal requirement at that time. I mean, we have case law. North Carolina has case law. You don't need a written acknowledgment. She acknowledged she received it. She knew it was there, and she continued working, and that is the traditional notion to make a handbook a contract. But you looked around and tried to find that acknowledgment form, and you finally found it, and you filed another motion based on the acknowledgment form. But the problem is the acknowledgment form now puts all of that law into question because of the language of the acknowledgment itself. Well, Your Honor, I think that's one of the errors that the district court made. They looked too broadly in their decision. You need to look at just the narrow focus of was there an – Tell us what you think we should look at. Yes, Your Honor, and I'll point you to some precedent that I think will help. No, forget the precedent. We're looking at a contract. Okay. Just tell us what we should look at. All right, yes. Joint Appendix, page 14, the employee handbook. It says the dispute conflicts resolution – I know that. Tell me what the signed authorization says. Well, the signed authorization says that I acknowledge, understand, accept, and agree to comply with the information contained in the handbook. Yeah, it says more than that there. Well, no, no, it does say more than that, certainly, Your Honor. You left out the language that's in dispute. That creates the whole dispute here, right? It does, Your Honor. But if you look at the law that we've cited, the fact that an employee handbook may not create a contract of employment is too broad of a question. I know that, but you're missing the point. And it's not – I don't think it's the language that's in question. One of the words that you use might be in question. Moreover, no provision should be construed to create any bindery – whatever that word means, I think it's binding – promises or contractual obligations between the company and the employees. That's the language you have to look at, isn't it? If you're looking to see if the employee handbook – Agreed to anything in the handbook binding the employee. It looks to me like that's the most obvious statement, isn't it? But, Your Honor, if you look at some of the cases that we cited – Listen, let's just talk about the facts and the words in this case. Do you admit that despite all the case law out there, the employee and the employer could reach language by which it's perfectly clear there's no binding obligation on either party in any matter? They certainly could. Okay, why does this language do it effectively for this case, then? I think if you look at the disclaimer that's in the handbook, the specific language where you say the dispute resolution program is contractual in nature, and then you go on further where both parties are giving up their right to court. I know that, but you still have the language where she signs saying that – your language that she signs saying no provision in that handbook should be construed as any contractual obligation. What do we do with that? Just throw that away? That's going to a broader question than the Supreme Court says that you need to look at. Well, it's going to the question of whether or not the arbitration agreement in the handbook binds her, and she says it doesn't. And on your language, which you want her to sign saying it doesn't bind her. How do you get around that? The courts say that you – How do you get around it? Just tell me. That doesn't mean anything? Those words mean anything? No, Your Honor, the acknowledgment form is designed to ensure that – Wait a second now. Let me say this. I would like for you to argue from the facts, not some idea of what you think it's supposed to say. We're looking at the facts and the evidence. How do we just say, moreover, no provision should be construed to create any contractual obligation? What do we do with that language? We just say we don't apply it? Your Honor, that's sometimes the difficult situation that you deal with employee handbooks because you are – Now, you all wrote this, right? Yes, sir. And you misspelled binding. Yes, sir. Well, you did. No, my – You're the only guy. Yes, sir. Binding, it says bindery. You agree that you misspelled it. It ought to be binding. Right. And so it doesn't create any binding promises or contractual obligations between the company and its employees. No binding promises or contractual obligations. So at best, you've got – with that other provision, you've got two provisions that are against one another. So it's ambiguous. So you're back to Supreme Court law and Moses Cone. You say that we have to construe it in your favor. You're saying if it's an ambiguous contract, that means they agreed to – your position is that means they agreed to arbitrate. That's a little stretch, isn't it, I think? Well, I think, Your Honor, you look at the Buckeye check cashing case from the Supreme Court that we cited. There the argument was you had a usurious contract that under Florida law was void and couldn't even be enforced. The Supreme Court said, well, that's for the arbitrator to decide. We are looking at the narrow issue of did the parties have an agreement to arbitrate. Yeah, but there they agreed to arbitrate, and there was no question about it. The fact that other aspects of the contract are illegal, violate the antitrust laws, the usury laws or whatever, doesn't mean it's not going to be arbitrated. I'll tell you what the – Judge King gratuitously gave you a sort of a nice opening on the ambiguity, but I'm not even ambiguous because under traditional law, and I think it's in other states too, if you're given a handbook and then you continue to work with that handbook, it creates a binding contract. The arbitration clauses are generally enforced. Yes, they are. Now, you as an advisor to the company says we are aware of that law. We know it's going to create a binding contract unless we agree otherwise, and so we're going to have an explicit contract entered into where both of us agree it's not a binding contract, and that's what your Acknowledgement IV does. It knocks out that law, which implicitly creates the binding contract with the handbook, and I don't know how you can screw it differently. Can't be written explicitly, overrule the implicit? Well, Your Honor, it is actually written in the handbook where it says that – But the handbook wasn't signed by anybody. I mean, if she never saw the handbook, you'd have a problem, right? Well, in this case, that's not an issue. She admits that she's had the handbook. I know she did, but I'm trying to get some principles on that. If she never saw it, it wouldn't create it. What creates it is that she's given it and continues to work with it in place. Correct. And it says in the handbook this is the way we resolve disputes. But the company then says we really – this is sort of guidance. I don't quite know. It's obviously somebody made a mistake probably within the company. But you require the employees to sign a document which says the handbook is not a contract. And so my question is would the explicit agreement override the implicit agreement created by a handbook plus continuing to work? Based on the cases that we cited, that the agreement to arbitrate with the consideration that says in the handbook that if you accept employment or continue employment, you've agreed to it, that's enough consideration. The Martin v. Vance case – We're not talking about consideration, are we? Well, if a contract was – We're talking about what the parties agreed to. What's the language the parties agreed to? How are we supposed to construe the fact that the handbook will not create a binding contract as to any term in it? Martin v. Vance, North Carolina law. Employment at will can be supplemented by other enforceable agreements. We're looking at one provision. There's another provision that says I understand that the information contained in the handbook are guidelines only  This is your provision which says I – makes her say I understand there's no contract and I understand you don't even need to be interpreted as a contract. The question is what do we do with that language that you made her sign, which, by the way, was exactly an expressed agreement between the parties, certainly because you gave her the offer to sign, and she did, over some implied law obligation. What law in North Carolina says that the expressed agreement of the parties is void because one side thinks they have an agreement? Is that contract law in North Carolina? Well, the law, as we cited for Martin v. Vance, no, the employee handbook does not create a contract of employment. You still have – It doesn't have anything. Listen, the contract of employment, push that aside. This case doesn't have anything to do with the contract of employment, does it? It has to do with the agreement or contract to arbitrate. Isn't that the issue? Yes, it is, Your Honor. And then how can that be in light of that? And that's – you say that is implied because she never acknowledged it by signing that handbook, right? It was assented to by her continued employment under the law. Exactly right. That would be implied, right? Yes, sir. But how did – the same question comes up that you haven't answered. How do you take that that overrides or trumps your expressed language contrary? This court and other courts have said that when you have the mutual promises to arbitrate, that's the agreement that you're looking at, and that's what's enforceable. I see the problem with that is that goes to the question of meeting of the minds and contract formation. This is evidence there is no meeting of the minds. Well, based on the cases that we've cited with very similar provisions – Why don't you argue the facts? We keep asking you how are you going to handle that document, and you won't tell us. No, Your Honor – In other words, what are we supposed to say about her agreement that the handbook creates no binding contract of any kind? Because she also agreed that the dispute resolution program – But what do we do with it? We just ignore it? What do we do with that language? Again, as I said – What would you have us do? Would you have us write an opinion that says this document is the same as if you took this document and blacked that language out? It's meaningless language? Is that your point? Yeah, yeah. Answer this. Is your view the language that is not construed to create binding contractual obligations? Your approach is that just gets blacked out. It doesn't mean anything. No, my – Then what does it mean on the question of arbitration? My answer to that would be that covers the much broader – I didn't ask you. As to arbitration, is your view the same on arbitration, whether that language is in this provision or not? Yes, sir. It's the same. It is the same. So in other words, what I said the answer would be yes, you would just black that out. It doesn't even matter. To the arbitration question. To the arbitration cause. You wouldn't have to look at that to decide if it's – I didn't ask you. You said you would black it out. It's meaningless. For the arbitration cause. Only on arbitration. Only on arbitration. Okay. Yes. Thank you. All right. Thank you, Your Honor. All right. We'll hear from Mr. Butler. Police Court. Harris Butler, Richmond firm of Butler Royals. I'm here today with my partner Zev Antel and our co-counsel from Raleigh, North Carolina, Stephen Dunn and Michael Dunn of Emanuel & Dunn. Your Honors, there's two fundamental issues for the court today that can resolve this appeal. The first being whether the trial court correctly held that there was no agreement to arbitrate. Second is whether the Rule 23-F petition was untimely filed and should be stricken. Starting where the court left off with questions to the appellant, with regard to the agreement to arbitrate, the bedrock starting point in all inquiries concerning arbitration is whether there is an agreement between the parties to arbitrate. And that's reflected in numerous Supreme Court cases, first option, Granite Rock. When you look at that basic contract law on whether or not there's an agreement, the subject of which is to arbitrate, is there any presumption or deference given to arbitration then? The language in Cone that was referenced does include within it, it says construction of contracts, as well as the deference to be given to other forms of. But that is, no, but construction of contract presumes that a contract has been formed. Exactly, exactly. So that question is, is there, I'm just asking, is your argument that there is, when you're looking at whether or not a contract to arbitrate was agreed to and formed, do you give a preference to formation based on the fact that the subject matter is going to be arbitration? You do not because nothing can override the fundamental requirement of an agreement between the parties to arbitrate. And under North Carolina contract law, as in most state common law, the meeting of the minds is critical. You know, fundamentally, the strong policy favoring Let's get away from policy, let's talk about the facts of this case. What do we do with the fact that there is an arbitration agreement? You don't have to win on whether or not there was a contract of employment. That's left aside. The question is whether or not there was an agreement to arbitrate, correct? What do you do in light of what the employment handbook says about that? That creates, it appears to create an agreement to arbitrate short of any contract of employment. And had Ms. Lorenzo executed an agreement or come to some understanding that that handbook provision would be accepted from her agreement with the company that no provision of the handbook can create a contract in any form or fashion, then there may be some argument. But in the face of the employer, Prime Communication, having drafted this agreement, that in two places in this six-paragraph acknowledgment states that under no terms will this ever be anything in the handbook will be ever considered as a contract. And we put both those on the table already? Yes. We've already asked questions about both those provisions. You can only win with the acknowledgment, right? The language of the acknowledgment. I mean, the acknowledgment is a fact. But look at the face of the handbook arbitration. In the absence of the acknowledgment, then we would have a much more difficult argument. Well, what argument would you have? A much more difficult one. Pretty difficult. You'd be dead in the water. There's plenty of cases that say that the fact that a handbook includes an arbitration provision, that it's enforceable. Let me say this. Is it fair you're never going to admit you're dead in the water on an argument? Is that fair? That's correct, Ron. But you would have a much tougher time, wouldn't you, without this acknowledgment form? We would. The acknowledgment form, though, is the core contract. The contract is that there's no contract. I mean, the agreement of the parties. This is a strange case. And had this acknowledged form not been signed, North Carolina law, and we have a Fourth Circuit case which actually interprets North Carolina law, says that if you receive a handbook and then continue to work, the handbook forms a binding contract. That's consideration. Right. Internet law jurisdiction. And I think it's in other states, too. The magistrate judge concluded there had to be some acknowledgment and an error about that. So had the first ruling, the initial ruling denying the motion to compel arbitration been appealed, and there had been no knowledge or nothing in the record that she had signed this acknowledgment form, it seems to me we might have been inclined to follow the North Carolina law in our interpretation of it, that that was an arbitration. It goes to arbitration. Unless we are able to demonstrate. But she said, or the magistrate judge said, that there was no acknowledgment signed. And so Prime starts looking around in its files and says, hey, we got an acknowledgment. And they put that in and file another motion for arbitration. And, of course, that one presents what we have before us today, where the acknowledgment form explicitly. And the first, of course, arbitration decision was not appealed. It might have been error for us if we were to compel arbitration if the record was incomplete at the time and didn't have this acknowledgment form. It's a strange record that has this handbook that seems to want to resolve disputes by arbitration on the face of the handbook, and then to have an acknowledgment form that says, oh, the handbook doesn't create that obligation. That's correct. There's nothing. Well, first of all, if the magistrate judge made a mistake, it appears to me, I think it's a she, I'm not sure. Magistrate Judge Swank. Is that a she? She, yes. That she, like an evidentiary mistake in my opinion, she was of the opinion that your client couldn't be held to that book as she'd signed something. I'm not sure that's the law. She wanted to say, I do think it probably is the law. You can't bind a person unless they have knowledge of that condition, number one. But she, I think, suggested the only way that there could be evidence that she knew of it was to see a signed document. I don't think that's correct. I think probably you could say they could testify every single employee without fail gets a copy of that. We make them sign and read it. You get to the reasonable inference that she knew the handbook and was bound, and therefore bound by it if she worked, without proof of the document. But that's more of an evidentiary thing, I believe. Because let me ask you this question. You could win this case under the right facts without this signed form. If the undisputed evidence was my client read the handbook, this is hypothetical, and then she said to the head of the company, who nobody doubts can bind the company, I'm not working if it's arbitration. And he'd go, I'll tell you, I'm telling you right now, you can work for us and you'll not be bound by arbitration. She wouldn't have to sign anything. That would be proof that there was an agreement, in that case an agreement, that there would be no arbitration. You could win that case easily, couldn't you? Yes, and an agreement can be proven without a signature. I'm just saying you happen to have one in this case. Right. I must, I should point out that the form that Ms. Lorenzo signed is at Joint Appendix 673. It's very hard to read. There is another form that appears at Joint Appendix 368 and 685 that is signed by a co-worker March 2010. This appears to be the same form signed by Charlotte Woodry. Is that page 687, is that the acknowledgment agreement? It is not. That's what I was going to get to. 687 and 684 is a form that Prime changed to use in 2011. And the differences are few and they don't address, there are no differences. Does it matter to your argument? It doesn't matter to the core issue of the same language on no contract. Why does it matter? Because it suggests that this handbook was available to her at the time she signed. I think that's their argument, that she had the handbook available at the time she signed. And, in fact, she signed this in this other form that she did sign. Let me ask you, I'm not quite sure what you're saying. The operative language that we've been talking about. This is it. So what argument are you making? How does that help you? Well, it probably doesn't help. I'm wondering why you're making it. Well, just to point out to the court that the actual six paragraphs that she signed is not 687, but is found at 673. But it doesn't matter? It doesn't change any of the language we're talking about about no contract or no meeting of the minds. The acknowledgment is silent as to dispute resolution. It expressly fails to reference arbitration provisions, expressly disclaims a contract. Does signing this, in your mind, make the issue of arbitration ambiguous, or does it make it nonexistent? It's nonexistent because the contract. Tell us why. Under what principles? Because the parties have agreed that the terms of the handbook cannot, under any circumstance, form a contract. And a contract or meeting of the minds is essential. Well, where in this agreement does the company say that, that no provision should be construed? Where is the company saying that in this agreement? Well, the company drafts it. The company provides it to her for her to sign and agree. It is written in language of I, the employee, agree. But they're agreeing with the company's provision of these terms. The terms that basically come out to an offer they make that she accepts. Absolutely. If it is ambiguous, what do we do? Well, there's case law that says that in ambiguous contracts, they also reserve the right to modify this at their discretion with no notice. It says that. What's that got to do with ambiguous? Well, the cases that find ambiguity find that the contract's illusory, and because under restatement. Oh, no, no, no, no, no. You have ambiguous terms in contracts all the time. That's where the parole evidence rule comes in. I'm asking, in general, but I'm asking, what do we do? I think I know what the other side say. They would say if it's ambiguous, under the law from the Supreme Court, you have to find arbitration. You say what? It's not ambiguous. I got that. I said if it's ambiguous. If it's ambiguous, then it's illusory, and under restatement of contracts 206, it requires that it be construed against.  Right, that there was no meeting of the minds. An ambiguous contract just means that the language could have two meanings, and you go to external evidence to find out what the real meaning was, and if the evidence shows they had a meeting of A item instead of B, it's the contract there. I mean, it doesn't make it illusory automatically. I mean, the case that I'm referring to is a district in Massachusetts, 2013, the Namachete versus Salter Schools, which we've cited in our brief, that indicates that where the employer in a handbook attempts to not be bound itself and says we reserve the right to amend, we reserve the right to change, that it's illusory. That's not ambiguous. That basically says we don't have an agreement. We have no agreement. I think you're confusing or conflating the idea of ambiguity in the contract and formation of the contract. The ambiguity would go if there is a contract, but there's some distinction about what a term means, but your argument really isn't. I sort of asked you that. But if these two, let me take away ambiguity. If the provision in the handbook that says no employment contract, but you agree to arbitrate, that language, and then we also look at this language which says none of that is any kind of binding on anybody, is that an ambiguity, or is that just lack of formation of a contract? I don't believe that's an ambiguity because they're very clear that no term in a handbook can be considered to have any contractual effect. But it seems to be, that's why I'm getting away from ambiguity, there seems to be some conflict in the language in the handbook and this language, but that doesn't go to ambiguity. Doesn't that go to whether or not there was a meeting of the minds? It does. As to whether there was, in other words, there was no meeting of the minds to agree to arbitrate. Isn't that your argument? Yes, because when she signed the acknowledgement, which is what she had in front of her, it says nothing in the handbook, which is only a guide, general principles, can form a contract. And so essentially our argument is they can rise no higher than the contract they presented to her. Do you think you've made your points on the no contract now? I do, Your Honor. Didn't you say the second issue that you wanted to talk about? Yes, the timeline is. If it's ambiguous, maybe we ought to send it back to have a hearing. I just don't. For all evidence. I don't see any ambiguity. If the court can figure it out. I don't see any ambiguity in the fact. They've got conflicting provisions in there. They say the dispute resolution, the thing is contractual in nature for as long as it remains in effect. And that's inconsistent with the. It is. It's inconsistent. So it runs both ways. So it's ambiguous. And that's where we would say it's illusory because, and it may not be ambiguous, but it's illusory. And that's the. You need to be a little bit careful. You're throwing around contract terms that I think that maybe are not in the proper use of those terms. That's why I tried to walk through. You don't think there's any ambiguity? No, sir. You think, not under contract ambiguity, maybe it looks like the two statements go in different ways. That's why I shifted to conflict. It looks like their effort to form a contract with you is in conflict with your effort not to have a contract with them. Right. Under their contract that they provided. Right. So that you think that is an ambiguity within the contract. That's the question of whether or not there was a formed contract. Yes, sir. And you don't. That's not an ambiguity. That's just unless there is a meeting of the minds. Right. I think the proper analysis is whether there's an agreement, whether there's a meeting of minds. And we have to look at that. In this case for what she thought. Correct. Because they have said what they think is in that arbitration provision. They think it does bind. She doesn't think it binds. Right. And so you think it's not an ambiguity. There's just no contract formation. Exactly. With respect to the Rule 23-F petition, on March 24th, 2014. That's the other appeal, right? That's the other appeal. The district court entered an order certifying a North Carolina wage and hour claim as a class pursuant to Rule 23. Seventeen days later, on April 10, 2014, a petition was filed for permission to appeal in accordance with Rule 26-F. That fell on a Thursday, so there were no weekends or holidays involved. Under the case that had not yet been decided at the time, but has since been decided by this court, Newcorp v. Brown, the 14-day timeline for filing a petition under 23-F is a mandatory 14 days. Oh, the rules say that. The rule says that. Oh, Rule 6 or whatever it is. When you compute, they changed all the rules to include the weekend. Rule 6-D and 26-C, Federal Rule of Appeal 26-C, allows service. Which is at a time. That's the end of the story? Yes, sir. That's the end of the inquiry. They did not. There's no discretion. The Newcorp court says it's rigid and inflexible and firmly established. There is no review of the Rule 23 certification. It's a strange case. You may be right on that. It's a strange case, though, where you have a case relying on a core of facts that violates the state wage and hour at the same time the federal labor standards. You get a class under the federal law, which is opt-in. Opt-in. And you get a class under the state law on the same types of facts, which is opt-out. Well, not exactly the same facts. There's an overtime case. Well, I understand this. But it's still wages. Yeah, but they're going to influence each other, the facts. There are going to be some overlapping facts. And as a consequence, you're going to have people, in one case, ruling binding people who are not part of the case. Having simultaneous class actions, which have opt-in and opt-out, has some very, very difficult propositions. I don't quite know how you guys are going to manage it, but what you're saying, it doesn't matter here because they're too late. Exactly. Thank you. Okay, thank you. Mr. Pollack? How do you get around the fact that it was filed out of time? It was our reading and understanding of the rules that you do get an additional three days from that. Who's your rules man? You get a new rules man. Well, I will take full responsibility for that. And a new contra man. Well, I just think I understand. The rules of service are one thing. The rules of filing something are the other, and it's pretty clear that if the rule requires you to file something, you file it on the day it requires you to file it. Yes, Your Honor. And it used to be ten days, and the rules changed to include all the weekends, and they added four days in order to accommodate that. So it's 14 days, absolutely, unless the day extends to the next day because your courthouse is not open. So here we have 14 days. It was filed 17 days after. Doesn't that end it for you? Yes, Your Honor. And I think there has been confusion around this issue. If you look at the new amendments that are coming in where anything that's electronic filing, they're getting rid of it. So you admit that they're right, that it's out of time. Answering his question, yes, Your Honor. I mean, that's giving away your appeal, I think. If you do not get to add the three days. You clearly don't get to add the three days. You're not going to say you did in the morning either, are you? No, Your Honor, it was our – I'm trying to give you a chance to fix it. Yes, Your Honor. And I think if you look, let's assume that it was – if the rule said you shall serve your answer by a certain date, you get three days added. Yes. If the rule says you shall file your answer on a given date, that's the date. Yes, Your Honor. Okay. And this rule says you shall file within 14 days, doesn't it? That is correct. And if there was a mistake, it was ours in calculating the deadline. How about the fact that we granted the petition for appeal? Maybe you've got law of the game. Well, Your Honor, I think certainly now that we're here, it would make things more efficient. You know, if we were wrong on that issue, I mean, everybody has brought the issue. But we already ruled it. We already granted your appeal. That is true. And this court – I thought we reserved the motion to dismiss, though. On the motion to strike, yes. But Judge King is correct with Rule 23F. Unlike other appeals, this court can say we don't want to hear a petition. But wait, wait, wait, wait, wait. We can have appeal and we can always look at an appeal for questions as to whether or not we have jurisdiction over the appeal. Oh, absolutely. I was just pointing out 23F with the petition, you have to get permission to go forward. This court can decide. I understand, but if we think there's a question of doubt or we want to hear counsel on even whether it's timely, we could have a hearing on it. And we reserved on the motion to dismiss. Absolutely. I think it's still pending. The motion to strike is pending. Correct. They moved to strike, and we held that in advance, pending oral argument. Yes, sir. We're trying to hear everybody out now. So we're giving you your say-so. All right. Thank you. But you've got a problem with the 17 days versus 14 days. Right. And if you look at the Pioneer Investment case that we cited – You do know, don't you, that Judge Niemeyer is the rules guru for the Fourth Circuit and has been on the advisory committee. He wrote the rules. Yes, sir. It's hard to argue with the person who wrote the rules. But you know what? We'll allow you. But I do want to address, because my time is about up, just a couple points that were raised with respect to the plaintiff's arguments. The Buckeye check cashing case that we cited too, the arbitration provision is severable from everything else. I think we've treated it that way in this case. And I think Judge Shetter was in response to some of your questions. If you look at what both the magistrate judge and then Judge Howard said, it really was an evidentiary issue the first time around, because they said Lorenzo admitted having seen the handbook. There's no evidence before the court she agreed to the arbitration provision. The question that was asked about – and there was evidence to the district court that Prime's policy was that every employee was going to sign it. Judge Howard said – But that doesn't get you anywhere, does it? Well, no. What we were trying to do was address the court's evidentiary. I know that, but we have the whole record in front of us now, and you have to deal with the record that's in front of us, which is the acknowledgment. Correct. But at the time, we were dealing with what seemed to be the – So they were wrong then, but they're right now? I mean, what if we say that? No. Well, I think they were wrong in both instances. Well, they actually wrote another opinion. Yes, sir. Another R&R, report and recommendation, and an opinion of the district court adopting it, which dealt with the fact that you all had filed that supplemental paper. Right. So we brought back the piece of evidence that seemed to be most troubling to the magistrate and the district court, and then they found another ground on which to say there was no arbitration. They read the document? They read the document. Well, they had it there the first time, too, as well. I see my time is up. Thank you, Your Honor. Thank you, Mr. Pollack. All right, we'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, Dennis W. Shedd